## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ALPHA UPSILON CHAPTER OF THE FRATERNITY OF BETA THETA PI, INC., | No. 4:19-CV-01061 |
| | (Judge Brann) |
| Plaintiff, | |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY; DAMON SIMS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; DANNY SHAHA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; and ERIC J. BARRON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 12, 2019

## I.    BACKGROUND

On June 21, 2019, Plaintiff, Alpha Upsilon Chapter of the Fraternity of Beta Theta Pi, Inc. (hereinafter "House Corp."), filed a seven-count complaint against Defendants, The Pennsylvania State University (hereinafter "Penn State"), Damon Sims ("Sims"), Danny Shaha ("Shaha"), and Eric J. Barron ("Barron").  On August 26, 2019, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and to Rule 12(b)(6) for failure to state a claim.

For the reasons that follow, I deny the motion in part and grant it in part. House Corp. will be provided leave to amend its complaint with respect to its due process claim (Count 1) and its third-party beneficiary claim (Count 7).  House Corp.'s equal protection, negligence, fraud and deceit, civil conspiracy, and tortious interference claims (Counts 2, 3, 4, 5, and 6) are dismissed with prejudice.[1] House Corp.'s breach of the covenant of good faith and fair dealing claim (Count 5) survives Defendants' motion to dismiss.

## II.      DISCUSSION

### A.      Motion to Dismiss Standard

#### 1.      Federal Rule of Civil Procedure 12(b)(1) – Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), the Court dismisses a complaint if it lacks the "very power to hear the case."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  "If a party asserts several objections and defenses to a complaint, including a F.R.C.P. 12(b)(1) defense for lack of subject matter jurisdiction, 'the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.'"[2]

---

[1]  In the course of briefing, House Corp. withdrew its fraud and deceit and civil conspiracy claims.  ECF No. 15 ("Opposition") at 6 n.3.

[2]  *Scanlin v. Soldiers & Sailors Mem'l Hosp.*, No. 4:06-CV-01915, 2007 WL 141014, at *2 (M.D. Pa. Jan. 17, 2007) (McClure, J.) *citing*  5B Wright & Miller, FEDERAL PRACTICE AND

Additionally, "[t]he procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different" from the familiar procedure under Rule 12(b)(6).[3] "At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."[4] "The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true."[5] "The factual attack, however, differs greatly, for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56."[6] "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction (its very power to hear the case) there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[7] "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself

---

PROCEDURE: CIVIL 3D § 1350 at 154-55 (2004); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

[3]   *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

[4]   *Id.*

[5]   *Id.*

[6]   *Id.*

[7]   *Id.* (brackets added).

the merits of jurisdictional claims."[8]  "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."[9]

### 2. Federal Rule of Civil Procedure 12(b)(6) – Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[10] and "streamlines litigation by dispensing with needless discovery and factfinding."[11] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[12] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[13]

Following the Roberts Court's "civil procedure revival,"[14] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[15] and *Ashcroft v. Iqbal*[16]

---

[8] *Id.*

[9] *Id.*

[10] *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[11] *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[12] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[13] *Neitzke*, 490 U.S. at 327.

[14] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[15] 550 U.S. 544 (2007).

[16] 556 U.S. 662, 678 (2009).

tightened the standard that district courts must apply to 12(b)(6) motions.[17]   These

cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and

replaced it with a more exacting "plausibility" standard.[18]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"[19] "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[20] "Although the

plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted

unlawfully."[21] Moreover, "[a]sking for plausible grounds . . . calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of

[wrongdoing]."[22]

The plausibility determination is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."[23] No matter

---

[17]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))
      ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[18]   *Id.*

[19]   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[20]   *Iqbal*, 556 U.S. at 678.

[21]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations
      and citations omitted).

[22]   *Twombly*, 550 U.S. at 556.

[23]   *Iqbal*, 556 U.S. at 679.

the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[24]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[25] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[26] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[28]

---

[24] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[25] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[26] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[27] *Iqbal*, 556 U.S. at 678.

[28] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[29]  Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[30] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[31]  It is permissible to consider full text of documents partially quoted in the complaint.[32]  It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[33]  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[34]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[35]  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[36]  In this matter, I find that these conditions have been met, and will consequently consider Defendants' attachments.

---

[29]  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[30]  *See id.* and Fed. R. Civ. P. 12(d).

[31]  *Faulkner,* 463 F.3d at 134.

[32]  *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos*., 75 F.3d 801, 808–09 (2d Cir.1996).

[33]  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

[34]  *Faulkner*, 463 F.3d at 134.

[35]  *Id, see also e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).

[36]  *Faulkner*, 463 F.3d at 134.

### B. Facts Alleged in the Complaint

The relevant facts alleged in the Complaint, which I must accept as true for the purposes of this motion, are as follows.

#### 1. The Deed

On or about October 29, 1928, Howard Walton Mitchell, an original organizer of House Corp, and the then-president of the Board of Trustees for The Pennsylvania State College,[37] executed a certain Deed transferring certain real property now known as 220 North Burrowes Road to House Corp. The current chapter house (the "Beta house") was built upon this real property and has been used by House Corp. to serve as a fraternity house continuously from 1928 to the present, as a place where the unincorporated association of Penn State students and members of the national fraternity Beta Theta Pi ("Beta") known as "the Chapter" live.[38]

#### 2. Penn State's Student Conduct Policies

All Penn State students are governed by the Office of Student Conduct, which oversees the University's disciplinary process, as administered by the Office of Student Affairs of the Penn State University. Shaha is the Senior Director of the Office of Student Conduct at Penn State and is responsible for complying with the

---

[37] Penn State acquired its current name in the 1950s.

[38] *See* ECF No. 1 ("Complaint") at ¶ 10.

terms of the Code of Conduct and the Student Conduct Procedures, which are particular policies and agreements that govern Penn State student conduct.[39]

Barron is the President of Penn State and is responsible for overseeing the programs, policies, and governing bodies that affect student conduct. This role includes implementing policies and procedures that ensure a safe environment for all students, and assuring compliance with the rules and regulations published by Penn State that govern such conduct.[40]

The Office of Student Affairs of Penn State regulates the conduct of the Penn State student population, including students living in dormitories owned by Penn State and properties not owned by Penn State, such as fraternities, apartments, houses, and other alternative living arrangements. In other words, the Office of Student Affairs purports to exercise disciplinary control over all Penn State students regardless of the living arrangements for any particular student.[41]

### 3. The Chapter's Relationship with Penn State

As part of the Penn State community, the Chapter also participates in the governing body for fraternities known as the Inter Fraternity Council of the Pennsylvania State University ("IFC"). The IFC is a branch of Penn State that participates in setting and enforcing policies, procedures and regulations relating to

---

[39] *Id.* at ¶ 23.

[40] *Id.* at ¶ 24.

[41] *Id.* at ¶ 25.

Greek life. The IFC regulates the conduct of students living in fraternities. Penn State and the Chapter are signatories to the Conduct Process, an agreement that governs the relationship between the Chapter and Penn State.[42]

Sims is the Vice President of Student Affairs at Penn State and is responsible for complying with the terms of the Conduct Process. He is also responsible for implementing programs and policies to ensure that all Penn State students are safe.[43]

Penn State also acted as House Corp's landlord by collecting, administering and processing payment of rents and other fees for members of the Chapter; withholding registration for Penn State classes if such rent and fees were not paid; and charging a fee on behalf of Penn State for such services provided. Penn State, acting through the IFC, regularly conducted monitoring and approval of social events hosted by the Chapter to confirm compliance with the IFC Code of Conduct. In addition, by the terms of the Deed from Penn State to House Corp., Penn State purported to exercise supervision and/or control of the Beta house.[44]

---

[42] *Id.* at ¶ 22, 25.

[43] *Id.* at ¶ 22.

[44] *Id.* at ¶ 26.

### 4. Timothy Piazza's Death, and Penn State's Ban of the Chapter

On or about February 2, 2017, Timothy Piazza, a Penn State student who desired to join the chapter, died while at the Beta house.[45]

After Mr. Piazza's death, Penn State officials, including Defendants, commenced an investigation without regard to the published procedures of the IFC and/or Office of Student Affairs. Penn State, among other things, conducted interviews directly with the local police department, reviewed grand jury information and interviewed grand jury witnesses without notice to House Corp. or the Chapter. House Corp. has repeatedly been denied access to a video recording which was confiscated from the Beta house showing the events of the evening of February 2, 2017.[46]

On February 16, 2017, Penn State issued a press release stating that its Office of Student Conduct was conducting an inquiry into Mr. Piazza's death, "focusing on issues related to the University's Code of Student Conduct and behavioral expectations for the fraternities the University recognizes." Penn State stated that based "on information gained through its inquiry thus far, the University has decided to withdraw immediately recognition of Beta Theta Pi fraternity. This revocation will remain in effect no less than five years and may be made

---

[45] *Id.* at ¶ 27.

[46] *Id.* at ¶ 28.

permanent upon completion of the criminal and University investigations now underway." Penn State also announced "additional measures impacting all Interfraternity Council chapters recognized by Penn State at University Park."[47]

On March 30, 2017, Penn State released a second press release announcing that it was permanently banning the Chapter from Penn State, and that the Chapter had no right to appeal this decision. Penn State stated that as its "student conduct investigation of the Beta Theta Pi fraternity continues, more disturbing facts have emerged, including a persistent pattern of serious alcohol abuse, hazing, and the use and sale of illicit drugs. The University has decided to permanently revoke recognition of Beta Theta Pi banning it from ever returning as a chapter at Penn State. This extraordinary action occurs in the context of a continuing criminal investigation into the death of Penn State sophomore Timothy Piazza."[48]

Penn State made the decision to permanently ban the Chapter from Penn State without following any of the published procedures and/or guidelines of the Office of Student Affairs and/or the IFC. As a direct result, House Corp. was forced to vacate the Beta house and House Corp. was cut off from all sources of income and/or ability to function as owner of the Beta house.[49] Further, Penn State made its announcement that it was permanently banning the Chapter without

---

[47] ECF No. 11-2 at 29-31.

[48] ECF No. 11-4.

[49] Complaint at ¶ 29.

giving the Chapter or House Corp. any opportunity to state their respective positions in relation to Penn State's investigation. Penn State did not permit either the Chapter or House Corp. to review the information upon which Penn State allegedly based its decision—including, among other things, the video of February 2, 2017 (to which Penn State was granted access), witness statements, and other information which Penn State indicated that it received.[50]

In previous situations, Sims and Penn State had recognized that an investigative and deliberative process was critical and needed to be relied upon to make decisions. Per Penn State's own guidelines and policies, a detailed report by the Office of Student Conduct and a hearing with the leadership of a fraternity charged with a violation must occur. Fraternities are private associations existing on private property and are governed by the IFC, which is associated with Penn State.[51]

In purporting to permanently ban the Chapter from conducting business and operating as a Beta Theta Pi chapter, Penn State was attempting to surreptitiously trigger a deed provision purporting to grant Penn State the option of purchasing the valuable real estate owned by House Corp. if the property is not utilized as a Beta Theta Pi Chapter House at below-market rates, in order to convert such real estate for its own purposes. On August 28, 2018, Penn State provided notice of their

---

[50]  Complaint at ¶ 30.

[51]  Complaint at ¶ 35.

intent to exercise these alleged property rights based upon their assertion that the property is no longer being used as a Chapter or fraternity house.[52]

## C.    Analysis

### 1.    The Remedies House Corp. Seeks for Alleged Violations of the Pennsylvania Constitution

There is no private cause of action for damages under the Pennsylvania Constitution.  *See Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011).  The Court therefore dismisses House Corp.'s claims for damages for alleged violations of the Pennsylvania Constitution.[53]  House Corp.'s claims for declaratory relief for those alleged violations[54] remain intact.  *Id.* at 688 (holding that "equitable remedies" such as "declaratory relief" were available under the Pennsylvania Constitution).

### 2.    Whether Statutes of Limitations Bar House Corp.'s Claims

House Corp.'s alleged claims for breach of contractual duty of good faith and fair dealing and breach of contract under a third-party beneficiary theory each have a four-year statute of limitations.[55]  House Corp.'s other claims (its constitutional claims, negligence claim, and tortious interference claim) are all

---

[52]   Complaint at ¶ 36.

[53]   *See* Complaint at 22-23.

[54]   *See id.*

[55]   *See* 42 Pa.C.S.A. § 5525.

subject to a two-year statute of limitations.[56]  The parties dispute when the non-contract claims accrued.  Defendants argue these claims accrued on March 30, 2017, when Penn State issued its second press release and banned the Chapter.[57] House Corp. argues the other claims accrued on August 28, 2018, when Penn State tried to exercise its right to purchase the Beta house pursuant to the Deed provision.[58]

"Federal law governs a cause of action's accrual date.  Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based. The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known.  As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. The cause of action accrues even though the full extent of the injury is not then known or predictable.  Were it otherwise, the statute would begin to run only after

---

[56]  *See Kost v. Kozakiewicz*, 1 F.3d 176, 189-90 (3d Cir. 1993) (two-year limitation on § 1983 claims); *McGinness v. Nazareth Borough*, No. CIV.A. 13-7087, 2015 WL 1511051, at *5 (E.D. Pa. Apr. 2, 2015) (two-year limitation on claim under Pennsylvania Constitution); *Greco v. Senchak*, No. CIV.A. 3:12-2576, 2013 WL 4520847, at *4 (M.D. Pa. Aug. 26, 2013), *amended on reconsideration in part*, No. CIV.A. 3:12-2576, 2013 WL 5755214 (M.D. Pa. Oct. 23, 2013) (two-year limitation on Pennsylvania negligence claim); *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) (two-year limitation on tortious interference claim).

[57]  *See* ECF No. 11 ("Defendants' Brief") at 13-14.

[58]  *See* Opposition at 9-11.

a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (internal citations and quotations omitted).

I analyze below the accrual dates of House Corp.'s various non-contract claims. I keep in mind the standards that the Third Circuit laid down in *Kach*.

### a. Accrual of House Corp.'s Due Process Claim

House Corp. argues that Defendants violated its substantive and procedural due process rights by depriving it of its property interest in the Beta house and its liberty interest in its reputation.[59] Per the Complaint, this deprivation happened when Defendants exercised their Deed right on August 28, 2018. So the two-year statute of limitations does not bar House Corp.'s due process claim.

### b. Accrual of House Corp.'s Equal Protection Claim

House Corp. argues that Defendants denied it equal protection by "subjecting the House Corp. to disparate treatment."[60] But the only "disparate treatment" to which House Corp. points is Penn State's ban of the Chapter.[61] The two-year statute of limitations thus bars House Corp.'s equal protection claim. The Court dismisses this claim without leave to amend.

---

[59] *See* Complaint at ¶¶ 39, 42; Opposition at 24-25, 28-29.

[60] Complaint at ¶ 48.

[61] Complaint at ¶ 48; Opposition at 29-32.

### c.    Accrual of House Corp.'s Negligence Claim

House Corp. argues that Penn State's "revocation of the Chapter's recognition" injured House Corp. by "cut[ting it] off from all sources of income and/or ability to function as the owner of the Beta house."[62]  This claim therefore accrued when Penn State banned the Chapter.  The two-year statute of limitations bars House Corp.'s negligence claim.  The Court dismisses this claim without leave to amend.

### d.    Accrual of House Corp.'s Tortious Interference Claim

The sections of the Complaint describing House Corp.'s tortious interference claim don't mention Penn State's exercising its Deed right at all.  House Corp. premises this claim on "Defendants' unilateral, arbitrary and capricious ban of the Chapter."[63]  This claim therefore accrued when Penn State banned the Chapter.  The two-year statute of limitations bars House Corp.'s tortious interference claim.  The Court dismisses this claim without leave to amend.

### e.    The Continuing Violations Doctrine

The "continuing violations doctrine" could give House Corp.'s equal protection, negligence and tortious interference claims a chance to survive their facial violation of the two-year statutes of limitations.  This doctrine tolls a statute of limitations period when a defendant's conduct (here, the ban of the Chapter) "is

---

[62]    Complaint at ¶¶ 29, 57; Opposition at 40-41.

[63]    Complaint at ¶ 77.

part of a continuing practice." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). In deciding whether to apply this doctrine, "courts should consider at least [two] factors: (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; [and] (2) frequency—whether the acts are recurring or more in the nature of isolated incidents."[64]

The continuing violations doctrine does not apply here, as House Corp. does not satisfy either of the above factors. As for subject matter, Penn State deciding to revoke its recognition of a fraternity chapter is sufficiently different from Penn State deciding to exercise its rights to obtain property. It does not "constitute the same type of discrimination." *See Cowell*, 263 F.3d at 294 (acts that each constituted "an independent violation of [plaintiff's] substantive due process rights and therefore [were] individually actionable" were sufficiently different in subject matter).[65]

---

[64] *Id.* The Third Circuit in *Cowell* outlined another factor: "degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." But a later Third Circuit decision, *Mandel v. M & Q Packaging Corp.*, clarified that "permanency is not required to establish a continuing violation." 706 F.3d 157, 166 (3d Cir. 2013).

[65] *See also Ferguson v. Merck & Co.*, No. CIV.A. 05-0451, 2008 WL 205224, at *17 (E.D. Pa. Jan. 23, 2008) (promotion fell "under the auspices of a failure to promote claim, not a hostile work environment claim" and therefore was "not part of the same type of discrimination"); *Lesko v. Clark Publisher Servs.*, 904 F. Supp. 415, 420 (M.D. Pa. 1995) (sexual harassment claim involved different type of discrimination than "dispensation of employment opportunities and benefits in a manner which discriminates according to gender").

My analysis on frequency in part follows the same road. Penn State deciding to exercise its rights to obtain property was not an "act[] of substantially similar nature to" Penn State's revocation of its recognition of the Chapter. *See Cowell*, 267 F.3d at 295 (act that constituted "a different due process claim" was not "substantially similar"). Further, Penn State's exercising of Deed rights happened about seventeen months after the revocation. The Third Circuit has held that, even if a defendant's acts had the same subject matter, "[f]our instances within the context of four years does not rise to a level of recurrence anticipated by the continuing violations doctrine." *Bennett v. Susquehanna Cty. Children & Youth Servs.*, 592 F. App'x 81, 85 (3d Cir. 2014).[66] Here House Corp. has shown fewer acts and a greater time span between them.[67]

### 3. Whether House Corp. Has Standing to Bring Its Due Process Claim

Defendants argue that House Corp. does not have standing to bring its due process claim.[68] "Standing implicates both constitutional requirements and prudential concerns." *Freeman v. Corzine*, 629 F.3d 146, 153 (3d Cir. 2010)

---

[66] *See also Spencer v. Courtier*, 552 F. App'x 121, 123 (3d Cir. 2014) (four acts that occurred "months apart" did not satisfy frequency requirement).

[67] Aside from this analysis, the Court believes Penn State's exercising of its Deed rights could constitute "continual ill effects from an original violation" (Penn State's banning of the Chapter)—which would render the continuing violations doctrine inapplicable. *See Cowell*, 267 F.3d at 293. "[T]he proper focus [for the continuing violation theory] is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). (This is *dicta* considering the Court's above dispositive analysis.)

[68] *See* Defendants' Brief at 14-19.

(internal citations and quotations omitted). The constitutional requirements, which I consider first,[69] are an "injury in fact," "causation," and "redressability." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). The "prudential concerns" are, as one might guess by the label of "concerns" as opposed to "requirements," rather loose in nature. The United States Supreme Court has ruled that prudential standing encompasses "at least three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).

The only prudential question here is whether I should prohibit House Corp. from raising the Chapter's legal rights. The Third Circuit has boiled down Supreme Court jurisprudence into the below three factors. I must balance all three; none are individually automatically dispositive.[70]

1) The plaintiff must suffer injury.

2) The plaintiff and the third party must have a close relationship.

3) The third party must face some obstacles that prevent it from pursuing its own claims.

---

[69] *Freeman*, 629 F.3d at 153.

[70] *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288-89 (3d Cir. 2002)

### a.　House Corp.'s Constitutional Standing to Vindicate Its Own Interests in Due Process

Leaving the Chapter's travails aside for the moment, House Corp. argues that it is suing to vindicate its own constitutionally-protected interests to continue on "as the fee simple owner of property subject to the Deed provision."[71]  House Corp. states that "Penn State exercised its unilateral power to trigger the Deed provision without providing anyone, including [House Corp.], notice or an opportunity to be heard to challenge its action invoking the . . . Deed provision."[72]  In essence, House Corp. argues that it had a right to procedural due process around Penn State's triggering of the Deed provision.

House Corp. has no such right.  The Third Circuit has outlined "two general types of contract rights [that] are recognized as property protected under the Fourteenth Amendment: (1) where the contract confers a protected status, such as those characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits; or (2) where the contract itself includes a provision that the state entity can terminate the contract only for cause."  *Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 49 F.3d 915, 932 (3d Cir. 1995).  The Deed does not confer a protected status on House Corp. and

---

[71]　Opposition at 16.

[72]　Opposition at 14.

does not include a provision that Penn State can terminate the Deed only for cause.[73]  No procedural due process rights blossom from this contract.

Therefore, if House Corp.'s due process claim is to proceed, it must do so under the auspices of House Corp.'s third-party standing to vindicate the Chapter's due process interests and rights.

### b. House Corp.'s Prudential Standing to Vindicate the Chapter's Interests in Due Process

Defendants seem to concede the first two third-party factors: (1) House Corp. has suffered an injury; and (2) House Corp. and the Chapter have a close relationship.  Yet these two factors are not dispositive; I must balance all three. And here, given this case's posture, the third factor does the brunt of the work.

First, House Corp.'s argument that it faced the requisite "obstacle" boils down to an argument that the individual Chapter members didn't have enough incentive to sue Penn State themselves.[74]  House Corp.'s permutation of this argument is a house built on worm-ridden wood.  Its individual points of disincentive—*e.g.*, that members had only "an immediate interest in their own active participation in the Chapter" and "were college students with college budgets"; that "several" Chapter members needed "to prioritize defending against criminal accusations"—do not meet the standard that the Supreme Court and Third

---

[73]  *See* ECF No. 11-2 at 23-25.

[74]  *See* Opposition at 21-23.

Circuit have set for what turns disincentive into a legitimate obstacle. "A practical disincentive to sue *may* suffice, although a mere disincentive makes for a less persuasive showing than an affirmative impediment." *Amato v. Wilentz*, 952 F.2d 742, 750 (3d Cir. 1991) (holding that as third party "faced no affirmative obstacle to suing," its "limited practical incentive to sue" "was hardly so overwhelming that it weighs significantly in favor of third party standing"); *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 290 (3d Cir. 2002) ("The stigma associated with receiving mental health services presents a considerable deterrent to litigation."); *Powers v. Ohio*, 499 U.S. 400, 414-15 (1991) (juror unconstitutionally excluded from venire faced sufficient obstacle because "it would be difficult for an individual juror to show [that discrimination would] recur" and "there exist considerable practical barriers to suit . . . because of the small financial stake involved and the economic burdens of litigation"); *Singleton v. Wulff*, 428 U.S. 106, 115-18 (1976) (doctors had standing to raise patients' claims as concern for privacy would disincline patients from suing and individual cases would be mooted).

Second, Chapter members were also able to sue Penn State themselves in the two years following the ban.[75] The presence of such lawsuits is not dispositive, but "the fact that [Chapter members] have previously filed suit bolsters [my]

---

[75] *See* ECF No. 18 ("Reply Brief") at 10-11.

conclusion that they are not sufficiently hindered in their ability to protect their own interests." *King v. Governor of the State of New Jersey*, 767 F.3d 216, 244 (3d Cir. 2014), *abrogated on other grounds by Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018).

Further, the statute of limitations for Chapter's due process claims has already run. Were I to allow prudential standing here, then, I'd essentially be giving the Chapter another bite at the apple after its statutory time was already up. This counsels in favor of placing more weight on the final third-party standing factor.

I therefore find that House Corp. lacks prudential standing to vindicate the Chapter's interests in due process.[76] I will only permit House Corp. to assert Defendants' violations of its own asserted property and liberty interests.

### 4. Whether House Corp. Has Stated A Claim for Deprivation of Due Process

I now proceed to whether House Corp. has stated a claim that, by exercising the Deed provision, Defendants violated House Corp.'s procedural and substantive due process rights under 42 U.S.C. § 1983 and Article 1, Sections 1 and 11 of the Pennsylvania Constitution.[77] To make out a claim of procedural due process

---

[76] *See Deraffele v. City of Williamsport*, No. 4:14-CV-01849, 2015 WL 5781409, at *7 (M.D. Pa. Aug. 19, 2015) (fact that landlord did not show that tenants faced a substantial obstacle to asserting their own rights and interests was dispositive in denying landlord third-party standing).

[77] The presence of Pennsylvania constitutional claims does not change the bulk of my analysis. *Mann v. Palmerton Area Sch. Dist.*, 33 F. Supp. 3d 530, 542-43 (M.D. Pa. 2014) (noting that

House Corp. must allege that both: (1) it was deprived of an individual interest encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) the procedures available to it did not provide due process of law.[78]  To make out a claim of substantive due process House Corp. must allege that both: (1) it was deprived of a protected property interest; and (2) the deprivation was by arbitrary or capricious government action.[79]

House Corp. cannot make out either of these claims because it does not make out that Defendants deprived it of a protected property interest by exercising the Deed provision.  First, as I explained above, Penn State's exercising the Deed provision did not deprive House Corp. of a protected property interest.  Second, House Corp. does not make out the deprivation of a liberty interest.  The Pennsylvania Constitution does protect reputation as a fundamental interest.[80] House Corp. alleges harm to its reputation, but "[a]s a direct result of Defendants' permanent ban of the Chapter."[81]  As I explained above, House Corp. does not have standing to seek redress for injuries stemming from Penn State's ban of the Chapter.

---

the "Pennsylvania Supreme Court has held that the requirements of Article I, Section 1, the Pennsylvania Constitution are not distinguishable from the Due Process Clause of the [Fourteenth] Amendment of the United States Constitution, and this Court must apply the same analysis to both claims.") (citations omitted).

[78]  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 (3d Cir. 2006).

[79]  *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

[80]  *See R. v. Com., Dep't of Pub. Welfare*, 636 A.2d 142, 149 (Pa. 1994).

[81]  Complaint at ¶ 44.

I dismiss House Corp.'s due process claim against Penn State with leave to amend.

### 5. Whether House Corp. Has Stated A Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

"Pleadings must be construed so as to do justice."[82]  Taking a liberal read of House Corp.'s complaint, I find that House Corp. has stated a claim for breach of the implied covenant of good faith and fair dealing.  The covenant of good faith and fair dealing involves "an implied duty to bring about a condition or to exercise discretion in a reasonable way."[83]  House Corp. complains that Sims, Barron and Shaha "committed fraud by permanently banning the Chapter under the auspices of fixing Penn State's pervasive alcohol problem, while really intending to create the conditions necessary to trigger the option to purchase in the original deed from Penn State to Beta."[84]  The Court reads this as a claim that Sims, Barron and Shaha brought about the Deed provision's condition precedent in an unreasonable way. Given the facts alleged in the Complaint concerning the lack of process that Penn State provided the Chapter when it was investigating Mr. Piazza's death, the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."[85]

---

[82]  Fed. R. Civ. P. 8(e).

[83]  *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993)

[84]  Complaint at ¶ 20.

[85]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  *See myService Force, Inc. v. Am. Home Shield*, No. CIV.A. 10-6793, 2013 WL 180287, at *14 (E.D. Pa. Jan. 17, 2013) (listing

### 6. Whether House Corp. Has Stated A Claim for Breach of Contract Under a Third-Party Beneficiary Theory

House Corp. also asserts that it was the third-party beneficiary of "the agreements between the Chapter and Penn State to follow the IFC Conduct Process, the Code of Conduct, and the Student Conduct procedures."[86] A party such as House Corp., who is "not expressly named in any of the agreements between the Chapter and Penn State," may only be a third-party beneficiary by satisfying the below two-part test.[87]

1) The recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties; and

2) The performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

---

"evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance" as representative types of bad faith); *Davis v. Fid. Nat. Title Ins. Co.*, No. 672 MDA 2014, 2015 WL 7356286, at *6 (Pa. Super. Ct. Mar. 18, 2015) (noting that an insurer who "fail[ed] to act in good faith and fair dealing" "failed to follow its own internal claims handling procedures"); *see generally Acri v. Varian Assocs., Inc.*, 121 F.3d 714 (9th Cir. 1997), *as amended* (Oct. 1, 1997) ("[Plaintiff] presents a triable issue of whether [defendant] breached the implied covenant of good faith and fair dealing when it failed to follow its own progressive discipline procedures."); *Duffield v. First Interstate Bank of Denver, N.A.*, 13 F.3d 1403, 1406 (10th Cir. 1993) (bank breached implied covenant of good faith and faith dealing by invoking an assignment provision without following notice procedures and without a good faith basis for doing so).

[86]  Opposition at 42.

[87]  *Zeigler v. Correct Care Sys.*, No. 1:16-CV-1895, 2018 WL 1470786, at *4 (M.D. Pa. Mar. 26, 2018) (citation omitted).

"It is true that a third-party beneficiary may be in contemplation without being specifically or individually designated."[88] But House Corp. still must show that Penn State and the Chapter intended for House Corp. to be a third-party beneficiary, and "such intent was within the parties' contemplation at the time the contract was formed."[89]

House Corp. has not satisfied the third-party beneficiary test. House Corp. has not shown that Penn State intended for it to be a third-party beneficiary of the IFC Conduct Process, the Code of Conduct, and the Student Conduct procedures. House Corp. points to three allegations regarding Penn State's regulation of student conduct, and argues that these allegations, combined with Penn State's right to control and supervise the House Corp.'s property in the Deed, provides enough evidence of Penn State's intent to benefit House Corp.[90] Yet House Corp. provides no evidence that Penn State entered into the IFC Conduct Process, the Code of Conduct, and the Student Conduct procedures with the Chapter in order to "control and supervise" the Beta house. The Court cannot make the leap in logic from procedures governing student conduct to the control and supervision of private property. Not, at least, without some factual support from House Corp.—

---

[88] *Guy v. Liederbach*, 459 A.2d 744, 750 (Pa. 1983) (*quoting Spires v. Hanover Fire Insurance Co.*, 70 A.2d 828, 830-31 (1950)).

[89] *Richard v. Fin. of Am. Mortg., LLC*, No. 3:18-CV-559, 2019 WL 1983824, at *8 (M.D. Pa. Jan. 7, 2019), *report and recommendation adopted sub nom. Richard v. Fin. of Am. Mortgages, LLC*, No. 3:18-CV-559, 2019 WL 1980693 (M.D. Pa. May 3, 2019).

[90] Opposition at 42-43.

other than the vague and broad Deed clause saying that Penn State had the right to control and supervise the Beta house. The Court dismisses House Corp.'s third-party beneficiary claim with leave to amend.[91]

## III.  CONCLUSION

Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) is granted in part and denied in part. The Court denies the Motion to Dismiss with respect to House Corp.'s breach of the covenant of good faith and fair dealing claim (Count V).

The Court grants the Motion to Dismiss with respect to House Corp.'s due process claim (Count V) and its third-party beneficiary claim (Count VII). House Corp. is granted leave to amend.

The Court dismisses House Corp.'s remaining claims; leave to amend is denied. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[92] "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could

---

[91] *See Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, No. 2:15-CV-00809, 2018 WL 791405, at *4 (W.D. Pa. Feb. 8, 2018) (no express intent to benefit third party and no requisite compelling circumstances); *Two Rivers Terminal, L.P. v. Chevron USA, Inc.*, 96 F. Supp. 2d 432, 451 (M.D. Pa. 2000) (contrasting situation where agreement could be "performed as written without making [plaintiff] a third party beneficiary" with Pennsylvania Supreme Court cases where "it was obvious that the beneficiaries were supposed to receive the benefit of the contract").

[92] *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir.1993).

be granted.[93] Although there is a "liberal pleading philosophy of the federal rules" a court will dismiss the amended complaint in its entirety with prejudice because another opportunity for amendment would be futile.[94] "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.[95] "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."[96]

As such, House Corp. will be given fourteen days from today's date to file an amended complaint with respect to House Corp.'s due process claim (Count 1) and its third-party beneficiary claim (Count 7). If no amended complaint is filed, the Court will summarily dismiss these claims pursuant to Federal Rule of Civil Procedure 41(b).

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[93] *Burlington*, at 1434. In assessing "futility," the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*; 3 MOORE'S FEDERAL PRACTICE, *supra* § 15.15[3], at 15–47 to –48 (3d ed.2000).

[94] *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

[95] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[96] *Id.*