# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE ALPHA UPSILON CHAPTER OF THE FRATERNITY OF BETA THETA PI, INC., | No. 4:19-CV-01061 |
| Plaintiff, | (Judge Brann) |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY; DAMON SIMS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; DANNY SHAHA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; and ERIC J. BARRON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, | |
| Defendants. | |

## MEMORANDUM OPINION

**MARCH 20, 2020**

## I. BACKGROUND

On June 21, 2019, Plaintiff, The Alpha Upsilon Chapter of the Fraternity of Beta Theta Pi, Inc. ("House Corp."), filed a seven-count complaint against Defendants The Pennsylvania State University ("Penn State"), Damon Sims ("Sims"), Danny Shaha ("Shaha"), and Eric J. Barron ("Barron").[1]

---

[1] ECF No. 1.

On November 12, 2019, the Court decided Defendants' initial motion to dismiss[2] and disposed of part of House Corp.'s complaint. The Court dismissed four claims with prejudice. Another claim—for breach of the covenant of good faith and fair dealing—survived. The Court provided House Corp. leave to amend its due process claim and its third-party beneficiary claim.[3] House Corp. filed an amended complaint two weeks later.[4]

On December 17, 2019, Defendants moved to dismiss Counts I (due process) and VII (third-party beneficiary) of House Corp.'s amended complaint for failure to state a claim.[5] Defendants also requested that the Court dismiss Count V (breach of the covenant of good faith and fair dealing) against Sims, Shaha, and Barron.[6] And Defendants moved under Federal Rule of Civil Procedure 12(e) for a more definite statement of House Corp.'s Count V as a general matter.

I deny Defendants' motion to dismiss in part and grant it in part. I grant Defendants' motion for a more definite statement.

---

[2] ECF No. 7.

[3] ECF Nos. 20 and 21.

[4] ECF No. 24.

[5] The peculiar numbering here comes from House Corp.'s inartful pleading. Though the Court dismissed four of House Corp.'s original claims *with prejudice*, House Corp. asserts them again in its amended complaint.

[6] Defendants make this request in their motion. But Defendants do not provide any briefing in support. (They do brief a similar issue, but with respect to Count VII, not Count V. *See* ECF No. 27 at 35-37.) Owing to the lack of briefing, the Court will deny this particular dismissal at this time, but Defendants may assert it again later when House Corp. submits a further amended complaint.

## II. DISCUSSION

### A. Motion to Dismiss Standard for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[7] and "streamlines litigation by dispensing with needless discovery and factfinding."[8] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[9] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[10]

Following the Roberts Court's "civil procedure revival,"[11] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[12] and *Ashcroft v. Iqbal*[13] tightened the standard that district courts must apply to 12(b)(6) motions.[14] These

---

[7] *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[8] *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[9] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[10] *Neitzke*, 490 U.S. at 327.

[11] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[12] 550 U.S. 544 (2007).

[13] 556 U.S. 662, 678 (2009).

[14] *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[15]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[18] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[19]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[20] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[15] *Id.*

[16] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[17] *Iqbal*, 556 U.S. at 678.

[18] *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[19] *Twombly*, 550 U.S. at 556.

[20] *Iqbal*, 556 U.S. at 679.

plausibility of entitlement to relief.'"[21]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[22] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[23] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[24]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[25]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[26] Typically, to consider materials

---

[21] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[22] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[23] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[24] *Iqbal*, 556 U.S. at 678.

[25] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[26] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[27] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[28] It is permissible to consider full text of documents partially quoted in the complaint.[29] It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[30] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[31] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[32] It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.[33] In this matter, I find that these conditions have been met, and will consequently consider Defendants' attachments.

### B. Motion for More Definite Statement Standard

A "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party

---

[27] *See id.* and Fed. R. Civ. P. 12(d).

[28] *Faulkner,* 463 F.3d at 134.

[29] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996).

[30] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

[31] *Faulkner*, 463 F.3d at 134.

[32] *Id, see also e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir.2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001).

[33] *Faulkner*, 463 F.3d at 134.

cannot reasonably prepare a response."[34] Put another way, this motion "is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading."[35]

A party must make this motion "before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."[36]

### C. Facts Alleged in the Amended Complaint

In my November 12, 2019 Memorandum Opinion, I gave a thorough factual background based on House Corp.'s initial complaint. The Court has modified that factual background to account for the allegations of House Corp.'s amended complaint. I accept these facts as true for the purposes of disposing of Defendants' instant motion.

#### 1. The Deed

On or about October 29, 1928, Howard Walton Mitchell, an original organizer of House Corp, and the then-president of the Board of Trustees for The

---

[34] Fed. R. Civ. P. 12(e).

[35] *Wadhwa v. Sec'y, Dep't of Veterans Affairs*, 505 F. App'x 209, 214 (3d Cir. 2012) (*quoting Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967).

[36] Fed. R. Civ. P. 12(e).

Pennsylvania State College,[37] executed a certain Deed transferring certain real property now known as 220 North Burrowes Road to House Corp. The current chapter house (the "Beta house") was built upon this real property and has been used by House Corp. to serve as a fraternity house continuously from 1928 to the present, as a place where the unincorporated association of Penn State students and members of the national fraternity Beta Theta Pi ("Beta") known as "the Chapter" live.[38]

## 2. Penn State's Student Conduct Policies

All Penn State students are governed by the Office of Student Conduct, which oversees the University's disciplinary process, as administered by the Office of Student Affairs. Danny Shaha is the Senior Director of the Office of Student Conduct at Penn State and is responsible for complying with the terms of the Code of Conduct and the Student Conduct Procedures, which are particular policies and agreements that govern Penn State student conduct.[39]

Eric J. Barron is the President of Penn State and is responsible for overseeing the programs, policies, and governing bodies that affect student conduct. This role includes implementing policies and procedures that ensure a

---

[37] Penn State acquired its current name in the 1950s.

[38] *See* ECF No. 24 ("Amended Complaint") at ¶ 10.

[39] *Id.* at ¶ 23.

safe environment for all students, and assuring compliance with the rules and regulations published by Penn State that govern such conduct.[40]

The Office of Student Affairs of Penn State regulates the conduct of the Penn State student population, including students living in dormitories owned by Penn State and properties not owned by Penn State, such as fraternities, apartments, houses, and other alternative living arrangements. In other words, the Office of Student Affairs purports to exercise disciplinary control over all Penn State students regardless of the living arrangements for any particular student.[41]

### 3. The Chapter's and House Corp.'s Relationships with Penn State

As part of the Penn State community, the Chapter also participates in the governing body for fraternities known as the Inter Fraternity Council of the Pennsylvania State University ("IFC"). The IFC is a branch of Penn State that participates in setting and enforcing policies, procedures and regulations relating to Greek life. The IFC regulates the conduct of students living in fraternities. Penn State and the Chapter are signatories to the Conduct Process, an agreement that governs the relationship between the Chapter and Penn State.[42]

Damon Sims is the Vice President of Student Affairs at Penn State and is responsible for complying with the terms of the Conduct Process. He is also

---

[40] *Id.* at ¶ 24.

[41] *Id.* at ¶ 25.

[42] *Id.* at ¶¶ 22, 25.

responsible for implementing programs and policies to ensure that all Penn State students are safe.[43]

Penn State also acted as House Corp's landlord by collecting, administering and processing payment of rents and other fees for members of the Chapter; withholding registration for Penn State classes if such rent and fees were not paid; and charging a fee on behalf of Penn State for such services provided.[44] In particular, Penn State processed and administered rental payments from Chapter members. After Penn State deducted a fee, and ensured compliance by the student in question with respect to their performance and standing, Penn State then forwarded the net payment amount to House Corp.[45]

Penn State, acting through the IFC, regularly conducted monitoring and approval of social events hosted by the Chapter to confirm compliance with the IFC Code of Conduct, including on the evening on February 2, 2017. In addition, by the terms of the Deed from Penn State to House Corp., Penn State purported to exercise supervision and/or control of the Beta house.[46] Penn State did such exercising of supervision and/or control via the provision of student regulations and disciplinary procedures that I described above.[47] These policies, procedures,

---

[43] *Id.* at ¶ 22.
[44] *Id.* at ¶ 26.
[45] *Id.* at ¶ 85.
[46] *Id.* at ¶ 26.
[47] *Id.* at ¶ 85.

and guidelines included the above IFC, Code of Conduct, and Student Conduct Procedures.[48]

Penn State also solicited and collected donations from donors. Such donations were to be used to support the Chapter and its endeavors, including the operation of the IFC, and the sponsoring of various student activities (such as Homecoming and Greek organizations). The donations were also to be used for the safety and security of the Chapter—for example, providing monitoring and security checks for social functions.[49]

### 4. Timothy Piazza's Death, and Penn State's Ban of the Chapter

On or about February 2, 2017, Timothy Piazza, a Penn State student who desired to join the chapter, died while at the Beta house.[50]

After Mr. Piazza's death, Penn State officials, including Defendants, commenced an investigation without regard to the published procedures of the IFC and/or Office of Student Affairs. Penn State, among other things, conducted interviews directly with the local police department, reviewed grand jury information and interviewed grand jury witnesses without notice to House Corp. or the Chapter. House Corp. has repeatedly been denied access to a video recording

---

[48] *Id.* at ¶ 85.

[49] *Id.* at ¶ 85.

[50] *Id.* at ¶ 27.

which was confiscated from the Beta house showing the events of the evening of February 2, 2017.[51]

On February 16, 2017, Penn State issued a press release stating that its Office of Student Conduct was conducting an inquiry into Mr. Piazza's death, "focusing on issues related to the University's Code of Student Conduct and behavioral expectations for the fraternities the University recognizes." Penn State stated that based "on information gained through its inquiry thus far, the University has decided to withdraw immediately recognition of Beta Theta Pi fraternity. This revocation will remain in effect no less than five years and may be made permanent upon completion of the criminal and University investigations now underway." Penn State also announced "additional measures impacting all Interfraternity Council chapters recognized by Penn State at University Park."[52]

On March 30, 2017, Penn State issued a second press release announcing that it was permanently banning the Chapter from Penn State, and that the Chapter had no right to appeal this decision. Penn State stated that as its "student conduct investigation of the Beta Theta Pi fraternity continues, more disturbing facts have emerged, including a persistent pattern of serious alcohol abuse, hazing, and the use and sale of illicit drugs. The University has decided to permanently revoke recognition of Beta Theta Pi banning it from ever returning as a chapter at Penn

---

[51] *Id.* at ¶ 28.

[52] ECF No. 11-2 at 29-31.

- 12 -

State. This extraordinary action occurs in the context of a continuing criminal investigation into the death of Penn State sophomore Timothy Piazza."[53]

Penn State made the decision to permanently ban the Chapter from Penn State without following any of the published procedures and/or guidelines of the Office of Student Affairs and/or the IFC. As a direct result, House Corp. was forced to vacate the Beta house and House Corp. was cut off from all sources of income and/or ability to function as owner of the Beta house.[54] Further, Penn State made its announcement that it was permanently banning the Chapter without giving the Chapter or House Corp. any opportunity to state their respective positions in relation to Penn State's investigation. Penn State did not permit either the Chapter or House Corp. to review the information upon which Penn State allegedly based its decision—including, among other things, the video of February 2, 2017 (to which Penn State was granted access), witness statements, and other information which Penn State indicated that it received.[55]

In previous situations, Sims and Penn State had recognized that an investigative and deliberative process was critical and needed to be relied upon to make decisions. Per Penn State's own guidelines and policies, a detailed report by the Office of Student Conduct and a hearing with the leadership of a fraternity

---

[53] ECF No. 11-4.

[54] Amended Complaint at ¶ 29.

[55] Amended Complaint at ¶ 30.

charged with a violation must occur. Fraternities are private associations existing on private property and are governed by the IFC, which is associated with Penn State.[56]

In purporting to permanently ban the Chapter from conducting business and operating as a Beta Theta Pi chapter, Penn State was attempting to surreptitiously trigger a deed provision purporting to grant Penn State the option of purchasing the valuable real estate owned by House Corp. if the property is not utilized as a Beta Theta Pi Chapter House at below-market rates, in order to convert such real estate for its own purposes. On August 28, 2018, Penn State provided notice of their intent to exercise these alleged property rights based upon their assertion that the property is no longer being used as a Chapter or fraternity house.[57]

**D. Analysis**

    **1. Due Process**

House Corp.'s amended complaint does not make out a substantive due process or a procedural due process claim.[58]

---

[56] Amended Complaint at ¶ 35.

[57] *Id.* at ¶ 36.

[58] *See* ECF No. 20 at 19-26 for the Court's earlier, more fulsome discussion of House Corp.'s due process claim. Even with House Corp.'s amended complaint now before the Court, the core of the analysis remains the same.

The only deprivation of process House Corp. alleges against itself[59] is Penn State's exercising of the Deed right. House Corp. has made only conclusory allegations that Penn State's exercising of the Deed right constituted an arbitrary or capricious government action.[60] Therefore, House Corp. has not made out a substantive due process claim.[61]

Further, House Corp. has not alleged that the procedures available to it concerning Penn State's exercising of the Deed right did not provide due process of law. Therefore, House Corp. has not made out a procedural due process claim.[62]

### 2. Third-Party Beneficiary

The Court first concluded that House Corp. "has not shown that Penn State intended for it to be a third-party beneficiary of the IFC Conduct Process, the Code of Conduct, and the Student Conduct procedures." The problem for House Corp., in the Court's first analysis, was that House Corp. was extrapolating that Penn State's entry into "procedures governing student conduct" related to its right under

---

[59] The Court already ruled that House Corp. lacked prudential standing to vindicate the Chapter's interest in due process, ECF No. 20 at 24, and that, therefore, "House Corp. does not have standing to seek redress for injuries stemming from Penn State's ban of the Chapter," *id.* at 25.

[60] *See* ECF No. 24 at ¶¶ 41-42.

[61] *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

[62] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 (3d Cir. 2006). Even if House Corp. had alleged either of the above violations, the Court notes that House Corp. has provided no Pennsylvania authority that a landlord's right to derive to rent is a protected property interest for Constitutional purposes. *Ruiz v. New Garden Twp.*, 376 F.3d 203, 207 (3d Cir. 2004), which House Corp. cites, supports the proposition that a tenancy creates a procedural due process property interest *for the tenant*. That case does not go so far as to provide the landlord the same interest.

the Deed to exercise "control and supervision of private property." And House Corp. was backing up this extrapolation with only "vague and broad" factual support.[63]

Here, the second time around, House Corp. has again failed to make out a third-party beneficiary claim. House Corp. describes "the contracts at issue" as "the agreements between the Chapter and Penn State, including the agreements to follow the IFC rules and procedures in disciplining the Chapter."[64] House Corp.'s claim regarding these contracts is deficient for three reasons.

First, **the absence of compelling circumstances**. In this case, in order to attain third-party beneficiary status, House Corp. needs to make out that "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties."[65] I find that House Corp. has not satisfied this burden.[66]

Second, **the absence of meaningful evidence of Penn State's intent to benefit House Corp.** As with its first Complaint, House Corp. has not presented meaningful evidence that in entering into the contracts at issue, which are

---

[63] *See* ECF No. 20 at 27-29.

[64] ECF No. 29 at 23.

[65] *Zeigler v. Correct Care Sys.*, No. 1:16-CV-1895, 2018 WL 1470786, at *4 (M.D. Pa. Mar. 26, 2018) (citation omitted).

[66] House Corp. seems to hint at "circumstances" flowing from the "intertwined" nature of the Deed and the "Chapter's right to maintain its standing as a recognized fraternity on Penn State's campus." ECF No. 29 at 27. But House Corp. provides no caselaw to support this vague assertion.

procedures designed to regulate student conduct as a general matter, Penn State intended to benefit House Corp., which was the Chapter's Beta house landlord. House Corp.'s invocation of an IFC statement that the IFC is designed to "maintain cooperation among . . . alumni . . . and the University" is not convincing.[67] It does not follow from this generalized statement that Penn State's entry into student conduct and student discipline procedures (which, as one might expect, apply only to current students) was intended to benefit all fraternities' alumni, including House Corp.[68]

And third, **the lack of liability for Sims, Shaha, and Barron.** As House Corp. concedes, House Corp. has not alleged that Sims, Shaha, and Barron were individual parties to the contracts at issue. House Corp. has only alleged that Penn State, as an institution, entered into these contracts.[69] "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract."[70] A third-party beneficiary claim requires a viable underlying breach of contract claim.[71] House Corp. has not alleged liability against Sims, Shaha, and Barron for an underlying breach of contract claim. This provides an independent

---

[67] ECF No. 29 at 26-27.

[68] House Corp. does not provide any caselaw to support such a leap in logic.

[69] *See* Amended Complaint at ¶ 22 ("***Penn State*** and the Chapter are signatories to the Conduct Process . . .") (emphasis added).

[70] *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, 153 F. Supp. 3d 778, 806 (W.D. Pa. 2015), *aff'd*, 870 F.3d 244 (3d Cir. 2017) (citation omitted).

[71] *See Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 497-98 (W.D. Pa. 2013).

reason to dismiss House Corp.'s third-party beneficiary claim, as to Sims, Shaha, and Barron in particular, with prejudice.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

As Federal Rule of Civil Procedure 8 requires that plaintiffs only make a short and plain statement of their claim, motions for a more definite statement, such as the one Defendants bring here, are "highly disfavored." Courts will only grant these motions "if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading."[72]

But here, House Corp. has commingled two claims—one that the Court, in "a liberal read" as the Federal Rules of Civil Procedure mandate, construed as a claim for breach of the implied covenant of good faith and fair dealing,[73] and one, for "civil conspiracy," that House Corp. withdrew during initial briefing.[74] House Corp. refers to its Count Five as "Civil Conspiracy and Bad Faith," and continues this commixture in its description of the claims.[75]

Under Federal Rule of Civil Procedure 10(b), "where a plaintiff asserts multiple claims of relief, the complaint should present each claim for relief in a

---

[72] *Country Classics at Morgan Hill Homeowners' Ass'n, Inc. v. Country Classics at Morgan Hill, LLC*, 780 F. Supp. 2d 367, 371 (E.D. Pa. 2011).

[73] *See* ECF No. 20 at 26.

[74] ECF No. 15 at 6 n.3.

[75] Amended Complaint at ¶ 74 (". . . as required for a claim of civil conspiracy and bad faith") and ¶ 75 ("As a direct and proximate result of such conspiracy, and acts of bad faith . . .").

separate count . . . and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading."[76] Given that House Corp.'s "Count Five" was in practice two counts, one of which the Court subsequently dismissed with prejudice, House Corp. runs afoul of Federal Rule of Civil Procedure 10(b). "A motion for a more definite statement is one tool by which a defendant may seek to remedy alleged deficiencies under Rule 10."[77] Here, Defendants' motion is an appropriate method for remedying a Rule 10(b) deficiency, and House Corp. must, therefore, amend its Count Five.

## III. CONCLUSION

Defendants' Motion to Dismiss is granted in part and denied in part. The Court denies the Motion to Dismiss with respect to House Corp.'s breach of the covenant of good faith and fair dealing claim (Count V). The Court grants the Motion to Dismiss with respect to House Corp.'s due process claim (Count I) and its third-party beneficiary claim (Count VII). Both of these claims are dismissed with prejudice.

---

[76] *Airgood v. Twp. of Pine*, No. CV 14-1249, 2016 WL 1247237, at *5 (W.D. Pa. Mar. 30, 2016) (cleaned up).

[77] *R.B. v. Hollibaugh*, No. 1:16-CV-01075, 2017 WL 663735, at *4 (M.D. Pa. Feb. 1, 2017), *report and recommendation adopted*, No. 1:16-CV-1075, 2017 WL 661577 (M.D. Pa. Feb. 17, 2017).

The Court grants Defendants' Motion for a More Definite Statement.  House Corp. will have fourteen days to further amend its complaint with respect to its breach of the covenant of good faith and fair dealing claim (Count V).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge